## Case No. 2,658.

### The CHESHIRE.

[2 Spr. 28.][1]

District Court, D. Massachusetts. Jan., 1861.

LIABILITY OF VESSEL TO SHIPPER—STOWAGE.

A vessel is liable in rem for damage caused to goods of one shipper by those of another, although the goods are stowed in the usual way, if the injury is caused by the goods of the third party being in bad condition when put on board.

In admiralty. This was a suit to recover for leakage of about one thousand two hundred and ninety-six gallons of sperm-oil, out of three thousand three hundred and five gallons, contained in twenty casks of various sizes, and shipped by said bark from Boston to London, in July, 1858. The libel alleged, that, by the bill of lading, the casks were received in good order, &c., but, when delivered, were shrunk by heat, and the one thousand two hundred and ninety-six gallons had leaked out between the staves and the chines of the casks, and, running down among the ballast, were in part pumped overboard, and the rest not worth the trouble of recovering. The answer left the libellants to prove the loss, but said that it was customary and proper stowage to put oil in casks with the other articles of the cargo in this manner; and that the agent of libellants saw the ship when partly loaded, knew the character of her cargo, and requested that the oil be sent, though a part of the oil-cake already stowed would have to be broken out, to let the oil go to the bottom of the ship. The following facts were proved:—The casks were properly placed over the ballast, directly under the main hatch. Cattle hoofs were filled in among, and spread upon, them to make an even surface; and there was unusual dunnage of staves, pine fire-wood, and Calcutta mats upon and around them. The rest of the low-

---

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

er hold was filled with oil-cake. The cargo between decks was oil-cake, pails, shoe-pegs, &c., and in the fore-hold a large quantity of cattle-hoofs. The cake was from all of the three linseed-oil mills in Boston and Chelsea. The master kept the fore and aft hatches open during the voyage, but made no effort to save the oil pumped up. The capacity of the ship was five hundred and forty-seven tons. The quantity of oil cake on board was nine thousand five hundred bags. The quantity of hoofs was twenty-four tons. The length of the passage, forty-seven days of pleasant weather.

Benjamin Dean, for libellants.
John C. Dodge, for claimants.

SPRAGUE, District Judge. There is no evidence that this loss was owing to any peril of the seas or any defect of the ship, and I do not think it is to be accounted for by the season of the year in which the passage was made. The warmth of the captain's cabin floor and the blistering of paint on the pails, with other testimony, point to heat as the cause of the loss, and this heat must have been from the cake or the hoofs. That such a loss cannot be said to be a common occurrence, is admitted by the defence made by claimant. There never could be a custom of stowing in any manner which would ordinarily result like this. There must have been some extraordinary cause of this phenomenon, and we have to rely on circumstantial evidence to ascertain what it was. The custom of stowing oil-cake near other cargo liable to be injured by heat shows that there is no principle of deterioration necessarily inherent in the cake. In its ordinary condition, the New York witnesses say it heats no more than grain. There must have been something unusual in the condition of this cake on the voyage. The only cause of the heat that any witness assigns is dampness; and this is strong circumstantial evidence that some of the cake was green when put on board, or that it was moistened afterwards. And a former agent of one of the mills has shown that a change has been made in the manufacture of the cake in that mill, by using less water than formerly. If a usage to store cargo in this way is to be made out, it is a Boston usage, and must depend upon the quality of the cake from all the mills that ship from Boston; and the fact that since 1858, changes have been made in the management of one of them, on account of actual damage to their cake on various voyages, is a presumption that the two other mills sent out a different article, for there is no proof that they experienced such losses. I cannot help thinking that the oil-cake from this mill may have been not in good condition when put on board.

There is some testimony that the hoofs stowed in the forepeak were wetted by showers before putting on board, and that steam issued from the fore hatch just over them,

while the vessel was at the wharf loading. This is strengthened by the fact, that there was dampness in the cake from some source; and it may be, that the hoofs moistened the cake, and the cake then heated the hold and shrunk the casks. This seems to me to be the more probable solution of the cause of the loss. That position of the evidence seems to me to throw the burden of the loss on the carrier. If the shipper had assented to the mode of stowing his oil, it might preclude him from now objecting; but that assumes that the other articles of the cargo were in good condition, or at least that he assented to the stowing with those particular articles.

The shipper in this case only knew that the cargo was to be made up mostly of "oil-cake." He cannot be held to have assented to the stowing with this cake, or such as this, if this was unseasoned. It is not necessary to come to a conclusion whether this was customary stowage. If it were proved that it was customary, and that this cake was put on board no more than ordinarily wet, I am not sure how this case would be decided. The case of Baxter v. Leland [Case No. 1,124] is the strongest for the claimant; but the custom in that case is spoken of as one long established and well known. And a circumstance relied upon by both Betts, J., and Nelson, J., in that case, is the fact that the shipper knew of the usage, and made provision for it. And the loss was not as large in proportion as this. In Lamb v. Parkman [Id. 8,020] there was not such unusual damage as this. I should be surprised to find an established usage going the length of this case. Decree for the libellants.

See Gillespie v. Thompson, cited 6 El. & Bl. 477, note, 36 Eng. Law & Eq. 227; The Col. Ledyard. [Case No. 3,027]; Bearse v. Ropes [Id. 1,192].